UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ISAAC MICHAEL-PAUL FEZZEY,

        Petitioner,                                    Case Number: 2:20-CV-10326
                                                          HON. NANCY G. EDMUNDS

v.

WILLIS CHAPMAN,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY,
AND GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

      Petitioner Isaac Michael-Paul Fezzey, currently in the custody of the Michigan Department of Corrections, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his convictions for felony murder, Mich. Comp. Laws § 750.316(1)(b); armed robbery, Mich. Comp. Laws § 750.529; first-degree home invasion, Mich. Comp. Laws § 750.110a(2); unlawful imprisonment, Mich. Comp. Laws § 750.349b; assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84; and felony-firearm, Mich. Comp. Laws § 750.227b. He raises five claims for relief. For the reasons explained below, the Court denies the petition.

**I. Background**

      Petitioner was tried before a jury in Kent County Circuit Court. The Michigan Court of Appeals summarized the evidence presented at trial as follows:

On the night of September 7, 2014, defendant and three other men participated in a commando style raid of the victim's residence in Kent County, Michigan. The men had information that the victim was keeping $80,000 in cash, which the victim acquired from selling drugs, stashed in his house. The four men drove to the victim's house in defendant's car. The defendant and two other men were dropped off, and approached the victim's house from the back. Video footage from security cameras outside the victim's house showed that they were all armed with guns, dressed in dark clothing, and their faces were covered. The three men then broke through the victim's backdoor, and one of the men shot and killed the victim's dog.

Defendant secured the living room, while the two other men went to the victim's bedroom. Josh Hansen, the victim's cousin, was the victim's roommate. He woke up to noises and went out to the living room to investigate. When he saw defendant standing there with a gun pointed at Hansen's face, Hansen assumed that defendant was with the police and was there to raid Hansen's house. To cooperate, Hansen got down on his knees. After Hansen got down, defendant beat him with the butt of his gun until Hansen was unconscious.

Meanwhile, when the other two men approached the victim's room, the victim jumped out the window next to his bed. One of the men fired at the victim as he ran, then pursued the victim out the back. The victim's girlfriend was staying at the victim's house that night, and the other man tied her up and brought her out to the kitchen. After bringing Hansen into the kitchen, defendant went into the victim's room and began searching for the $80,000. Outside, the man pursuing the victim fired two shots at the victim from the victim's back deck. The man then caught up to the victim and stabbed him several times with a knife. The victim managed to escape and ran into the street, where the fourth man involved in the raid drove up in defendant's car. The victim got into defendant's car, and the driver proceeded to kick the victim out into the street, where the victim eventually died. According to the medical examiner that performed the autopsy of the victim, the victim had six bullet wounds, one of which would have been fatal; two stab wounds from a knife, both of which would have been fatal; and potentially fatal head injuries consistent with falling from a vehicle and hitting the person's head on concrete.

The driver pulled defendant's car behind the victim's house, and all three men got in and drove away. The four men drove to Zachary Bennett's

house, who was their friend. The men told Bennett about the robbery, that they had a scuffle with the victim, and that they did not get any money. The four men returned the next day after they found out that the victim had died. They proceeded to relay in detail to Bennett their accounts of the night before. Eventually, all four men were arrested. The police interviewed defendant, during which defendant confessed to his involvement in the robbery of the victim's home. While defendant was in prison, he wrote numerous letters, four of which were presented at trial. In those letters, defendant confessed to his involvement in the robbery.

A search warrant was executed for defendant's apartment and revealed three guns that matched the type of guns that the men were carrying in the victim's security footage. Ballistics matched two of the guns from defendant's apartment to used and unused casings of ammunition found at the victim's residence. A search of defendant's car revealed several blood stains, including one soaked all the way through the seat to the floor. A DNA analysis matched the blood stains to the victim. Another search warrant executed at defendant's biological mother's house revealed a burn pile that contained burned boots, burned pieces of clothing, and pieces of nylon.

*People v. Fezzey*, No. 329361, 2016 WL 7493865, *1-2 (Mich. Ct. App. Dec. 27, 2016).

On August 11, 2015, Petitioner was sentenced to life imprisonment for felony murder; 15 to 60 years for armed robbery; 7 to 20 years for first-degree home invasion; 5 to 15 years for unlawful imprisonment; 5 to 10 years for assault with intent to do great bodily harm; and 2 years imprisonment for felony-firearm. *Id.*

Petitioner filed a motion for new trial asserting that his custodial statement should have been suppressed because he invoked his right to counsel, that counsel was deficient for failing to file a motion to suppress, and that the prosecutor misstated the law of felony murder during jury selection. The trial court denied the motion. *See* ECF No. 10-12.

3

Petitioner filed an application for leave to appeal in the Michigan Court of Appeals raising the same grounds presented in his motion for new trial. The Michigan Court of Appeals affirmed Petitioner's convictions. *Fezzey*, 2016 WL 7493865 at *1. The Michigan Supreme Court denied Petitioner's application for leave to appeal. *People v. Fezzey*, 500 Mich. 1060 (Mich. 2017).

After completing state court direct review, Petitioner filed a motion for relief from judgment in the trial court arguing that he was denied his right to present a defense and that he received ineffective assistance of trial and appellate counsel. The trial court denied the motion. *See* 12/7/18 Order, *People v. Fezzey*, No. 14-10940-FC (ECF No. 10-17, PageID.894). The Michigan Court of Appeals denied leave to appeal, *People v. Fezzey*, No. 347571 (Mich. Ct. App. Dec. 23, 2019), as did the Michigan Supreme Court. *People v. Fezzey*, 505 Mich. 943 (Mich. Dec. 23, 2019).

Petitioner then filed this habeas corpus petition, raising these claims:

I. The trial court improperly admitted Fezzey's statement taken during custodial interrogation, after Fezzey invoked his right to counsel, in violation of his right not to be compelled to be a witness against himself, under the 5th Amendment to the U.S. Constitution.

II. The prosecutor committed misconduct by presenting a hypothetical, which misstated elements of charge and reduced State's burden, and obtained promises from jurors to apply the hypothetical where trial court's curative instruction was insufficient because prosecutor told the jury that it could disagree with the court, continued to obtain promises from jurors, and trial counsel acquiesced in the error, in violation of Fezzey's right to a fair trial, under the 6th and 14th Amendments to the U.S. Constitution.

III. Fezzey was deprived an opportunity to negate element of offense and present complete defense of lack of *mens rea* to form the specific intent

4

> required to aid and abet felony murder, due to his autistic disorder, in violation of his right to due process and fair trial, under the 5th, 6th, 8th, and 14th Amendments to the U.S. Constitution.
>
> IV. Trial counsel failed to raise the claims made in grounds one, two, and three of this petition in the trial court, in violation of Fezzey's right to effective assistance of trial counsel, under the 6th Amendment to the U.S. Constitution.
>
> V. Appellate counsel failed to raise the claims made in grounds three and four of this petition on appeal, in violation of Fezzey's right to effective assistance of counsel under the 14th Amendment to the Constitution.

Respondent has filed an answer in opposition and the relevant state court records and transcripts.

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405

5

(2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 408.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

"[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102.  Further, "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." *Id.*

A state court's factual determinations are entitled to a presumption of correctness on federal habeas review. See 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).  Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

6

### III. Discussion

#### A. Petitioner's Custodial Statement

Petitioner argues that his Fifth Amendment right to counsel was violated when the trial court admitted into evidence his custodial statements which, he claims, were made after he unequivocally invoked his right to counsel.

The Fifth Amendment, which is made applicable to the states by the Fourteenth Amendment, protects an accused from compulsory self-incrimination. In *Miranda v. Arizona*, the Supreme Court held that the prohibition against compelled self-incrimination requires a custodial interrogation to be preceded by advice that the putative defendant has the right to an attorney and the right to remain silent. 384 U.S. 436, 479 (1966). The Court further held that if the putative defendant invokes his right to counsel, "the interrogation must cease until an attorney is present." *Id.* at 474. In *Edwards v. Arizona*, the Supreme Court "reconfirm[ed]" the rule established in *Miranda*, that, when a suspect has invoked the right to have counsel present during custodial interrogation the suspect may not be "subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 U.S. at 484-85

An individual must invoke the right to remain silent unambiguously. *Berghuis v. Thompkins*, 560 U.S. 370, 381-82 (2010) (holding that individual who did not say that "he wanted to remain silent or that he did not want to talk with the police," failed to invoke his right to cut off police questioning). "The admissibility of statements obtained

7

after an individual has invoked his right to remain silent depends on whether the police 'scrupulously honored' the 'right to cut off questioning.'" *Tremble v. Burt*, 497 F. App'x 536, 544 (6th Cir. 2012) (quoting *Michigan v. Mosley*, 423 U.S. 96, 104-05 (1975)).

Petitioner argues that he separately invoked his right to counsel multiple times. The Michigan Court of Appeals held that "none of defendant's statements constituted an unequivocal or unambiguous invocation of defendant's right to counsel." *Id.* at *4. The Court need not decide whether the court of appeals' decision was contrary to, or an unreasonable application of, Supreme Court precedent because, even if admission of Petitioner's statement violated his Fifth Amendment rights, any error was harmless. *England v. Hart*, 970 F.3d 698, 711 (6th Cir. 2020) (admission of statement obtained in violation of defendant's right to counsel is subject to the harmless-error analysis). *See also Arizona v. Fulminante*, 499 U.S. 279, 295 (1991) (The harmless-error analysis applies to coerced confessions.).

On habeas review, an error is harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). To meet this standard there must be more than the "reasonable possibility" that the error contributed to the jury's verdict. *Mitzel v. Tate*, 267 F.3d 524, 534 (6th Cir. 2001) (quoting *Brecht*, 507 U.S. at 637). If the Court harbors "grave doubt" about whether the state court's error had a "substantial and injurious effect or influence in determining the jury's verdict" then the error is not harmless. *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)) (internal quotation marks omitted).

8

Even excluding the Petitioner's custodial statement, the evidence against him was overwhelming. The evidence presented included:

> Bennett's extensive testimony regarding the events surrounding the robbery; the video footage from the outside of the victim's home that showed defendant's car passing the residence and three individuals approaching the home with guns; the victim's blood in defendant's car; the guns found in defendant's home and the ballistic evidence matching those guns to rounds of ammunition found at the victim's home; and defendant's letters while he was in prison, in which defendant confessed his involvement in the robbery.

*Fezzey*, 2016 WL 7493865, at *5.

In light of the overwhelming evidence of guilt, the admission of Petitioner's custodial statement did not have a substantial or injurious influence or effect on the verdict. Petitioner is not entitled to relief on this claim.

### B. Prosecutorial Misconduct

In his second claim, Petitioner asserts that the prosecutor engage in misconduct during *voir dire* in two ways: (1) discussing with the jury a legally inaccurate hypothetical which the prosecutor used to discuss the elements of felony murder; and (2) eliciting promises from the jury that they would convict Petitioner regardless of whether the prosecution proved malice.[1]

---

[1] Respondent argues that Petitioner's prosecutorial misconduct claims are procedurally defaulted. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the Court finds

9

A prosecutor's misconduct violates a criminal defendant's constitutional rights if it "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct entails much more than conduct that is "undesirable or even universally condemned." *Id.* at 181 (internal quotation omitted). To constitute a due process violation, the conduct must have been "so egregious so as to render the entire trial fundamentally unfair." *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000) (citations omitted). The *Darden* standard "is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) (alteration in original)). "That leeway increases in assessing a state court's ruling under AEDPA," because the court "'cannot set aside a state court's conclusion on a federal prosecutorial-misconduct claim unless a petitioner cites ... other Supreme Court precedent that shows the state court's determination in a particular factual context was unreasonable.'" *Stewart v. Trierweiler*, 867 F.3d 633, 638-39 (6th Cir. 2017) (quoting *Trimble v. Bobby*, 804 F.3d 767, 783 (6th Cir. 2015)).

First, Petitioner argues that the prosecutor committed misconduct during jury selection by advancing the following hypothetical:

> [Prosecutor ]: What if he says -- she says to cousin, says "I'm going to rob this place," and cousin talks her out of it, he thinks "we're good," and they

---

that the interests of judicial economy are best served by addressing the merits of these claims.

> go to the store, he just sits in the car, and in the window he sees Granny pull the gun, and he sees Granny shoot the clerk and kill him. She runs to the car and she says, let's go, let's go, and he drives her off, and they split the proceeds of what she got. Is he now in trouble?
>
> Jurors: Yes.
>
> [Prosecutor ]: The law says that he's as guilty as Granny because he knowingly assisted. Okay?

Fezzey, 2016 WL 7493865, at *6.

The prosecutor's hypothetical was a misstatement of the law for aiding and abetting a felony murder because, under Michigan law, an element of felony murder is that the defendant acted "with the intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result." *Fezzey*, 2016 WL 7493865, at *6. In the hypothetical, the cousin lacked the requisite intent. *Id.*

The Michigan Court of Appeals held that the prosecutor's misstatement of the law did not impact Petitioner's substantial rights or prejudice him. *Id.* The state court reasoned that the evidence against Petitioner was overwhelming and the trial court corrected the prosecutor's inaccurate statement by clarifying the elements of felony murder under an aiding and abetting theory. *Id.* at *7. The Michigan Court of Appeals also noted that, at the beginning of trial, the trial court told the jury they must "take the law" as it is given by the court and, at the close of the proceedings, instructed the jury as follows: "If a lawyer has said something different about the law, you are to follow what I say in that connection." *Id.*

11

Under the deferential standard of review applicable on habeas review, the Michigan Court of Appeals' rejection of this claim was not unreasonable. A fairminded jurist could conclude, for the reasons stated by the Michigan Court of Appeals, that although the prosecutor's hypothetical misstated the law, it did not so infect the trial with unfairness as to rise to the level of a due process violation.

Petitioner also alleges that the prosecutor improperly elicited promises from jurors that they would convict Petitioner if it was proven beyond a reasonable doubt that he apssisted in the crime. The Michigan Court of Appeals held that Petitioner mischaracterized the prosecutor's questioning:

> Defendant mischaracterizes the prosecution's questioning during *voir dire*. Rather than eliciting promises about whether each juror would convict defendant, the prosecution was questioning each juror if they were comfortable with the idea of convicting a person of murder even though the person did not technically kill another person. This was a proper line of questioning to determine whether the jurors would be able to apply the law of aiding and abetting a felony murder to the facts of this case. Because the prosecution was attempting to determine whether the jurors could impartially apply the law, this was a proper function of *voir dire*. *Sawyer*, 215 Mich. App at 186. Further, to the extent that these questions may have confused the jurors as to the elements of aiding and abetting a felony murder, the trial court gave curative instructions ... Accordingly, the prosecution's questioning of potential jurors about whether they would be comfortable convicting defendant for a murder even if defendant did not technically kill another person was not plain error.

*Fezzey*, 2016 WL 7493865, at *8.

The Michigan Court of Appeals' decision was reasonable and supported by the record. The prosecutor's *voir dire* questions essentially asked the jurors whether they could follow the law and convict Petitioner of felony murder even if he did not pull the

12

trigger. That is, the prosecutor only asked the jurors whether they could apply the law. Petitioner has not shown that the Michigan Court of Appeals' decision denying this claim "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker*, 567 U.S. at 47 (quoting Harrington, 562 U.S. at 103).

### C. Evidence Regarding Asperger's Syndrome

In his third claim, Petitioner argues that he was denied the opportunity to present evidence that he suffers from Asperger's Syndrome and that this impacted his ability to form the requisite intent for felony murder under an aiding and abetting theory.

Respondent argues that this claim is procedurally defaulted. The Court finds the claim procedurally defaulted and Petitioner has not established cause and prejudice to excuse the default, nor has he shown that failure to consider the claim would work a manifest injustice. Moreover, even if the claim were not defaulted, habeas relief would be denied because the claim is meritless.

Federal habeas relief is precluded on claims that were not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "independent of the federal question and adequate to support the judgment." *Walker v. Martin*, 562 U.S. 307, 315 (2011) (internal quotations omitted).

13

Petitioner first raised this issue in a motion for relief from judgment. The Michigan Supreme Court denied Petitioner leave to appeal from the denial of his motion under Michigan Court Rule 6.508(D). *See People v. Fezzey*, 500 Mich. 1060 (2017). The Michigan Court of Appeals denied the motion in a form order that affirmed the trial court's decision. *See People v. Fezzey*, No. 347571 (Mich. Ct. App. July 2, 2019). These brief form orders are unexplained orders so the Court must "look to the last reasoned state court opinion to determine the basis for the state court's rejection of [the] claim." *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

The last reasoned state court opinion is the trial court's opinion denying Petitioner's motion for relief from judgment. The trial court specifically relied on Michigan Court Rule 6.508(D)(3) to deny Petitioner's claims, and found no cause or prejudice to excuse the default and no credible showing of actual innocence. (*See* ECF No. 10-15, PageID.758-60.) The Sixth Circuit recognizes Mich. Ct. Rule 6.508(D)(3) as an independent and adequate state ground sufficient to invoke procedural default. *See Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005). Petitioner's claim is procedurally defaulted unless he can establish either (1) cause for the default and prejudice from the alleged constitutional violation, or (2) that failure to consider the claims would result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

To establish "cause", a petitioner must "'show that some objective factor external to the defense impeded counsel's efforts to raise a claim in the state courts.'" *Davila v.*

14

*Davis*, — U.S. —, 137 S. Ct. 2058, 2066 (2017) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "A factor is external to the defense if it "cannot fairly be attributed to" the prisoner." *Id.* (quoting *Coleman,* 501 U.S. at 753).

Petitioner alleges his trial and appellate attorneys' ineffectiveness establishes cause to excuse his default. Ineffective assistance of counsel may constitute cause excusing a procedural default. *Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013). An ineffective assistance of counsel claim has two components. *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *Id.* at 687. To establish deficient representation, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. In order to establish prejudice, a petitioner must show that, but for the constitutionally deficient representation, there is a "reasonable probability" that the outcome of the proceeding would have been different. *Id*. at 694.

A petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th

15

Cir. 1990). The process of "'winnowing out weaker arguments on appeal' " is "the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986), quoting *Barnes*, 463 U.S. at 751-52. "'[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome.'" *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688.

The trial court held that Petitioner failed to overcome the presumption that appellate counsel provided reasonable professional assistance because Petitioner failed to show that the underlying claim had merit. The trial court reasoned that Petitioner did not establish "that his diagnosis made him unable to understand the situation he was in, or that it makes him incapable of forming criminal intent." (ECF No. 10-15, PageID.759.) For this reason, the trial court also held that Petitioner failed to overcome the presumption that trial counsel's conduct was reasonable. (*Id.*) Petitioner fails to proffer any evidence to this Court which would call the trial court's decision into question. He references six articles/papers submitted in state court with his motion for relief from judgment. These papers concern autism spectrum disorders and the criminal justice system. The papers do not pertain specifically to Petitioner or his diagnosis nor do the

16

papers support a conclusion that Petitioner could not have formed the requisite intent to commit felony murder under an aiding and abetting theory.

The Michigan Court of Appeals' decision that trial and appellate counsel provided reasonable professional assistance was not contrary to, or an unreasonable application of, *Strickland* or *Jones*. Thus, this claim is procedurally defaulted and barred from review unless Petitioner can establish that a constitutional error resulted in a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995). The Supreme Court has tied the miscarriage of justice exception to procedural default to a petitioner's innocence. *Id.* To make a showing of actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt." *Id.* at 327. Petitioner fails to present new, reliable evidence in light of which no reasonable juror would have found him guilty. Therefore, this claim is procedurally defaulted.

### E. Ineffective Assistance of Trial Counsel

Finally, Petitioner claims that trial counsel was ineffective for not moving to suppress his custodial statements and for failing to object to the prosecutor's misconduct.[2]

---

[2] The Court addressed Petitioner's claim that counsel was ineffective for failing to adequately argue that his Asperger's Syndrome rendered him was unable to form the requisite intent in the preceding section.

17

The Michigan Court of Appeals held that counsel's decision not to move to exclude Petitioner's custodial statement could have been the result of reasonable trial strategy. The state court reasoned that allowing the police interview to be shown to the jury opened the door to admission of evidence of Petitioner's Asperger's Syndrome. *Fezzey*, 2016 WL 7493865 at *5. This evidence would have been inadmissible otherwise. *Id.* The state court's decision is not unreasonable, particularly because the jury would, in any event, hear a different confession through Petitioner's incriminating jail letters.

Moreover, the state court's decision that Petitioner was not prejudiced by any error is not contrary to, or an unreasonable application of, *Strickland*. As has already been discussed, the evidence against Petitioner was substantial and included letters he authored directly implicating him in the crime.

Petitioner's claim that his attorney was ineffective for failing to object to the prosecutor's misconduct is also meritless. As already discussed, Petitioner failed to show that the prosecutor engaged in misconduct. Counsel, therefore, was not ineffective for failing to object on this basis.

Finally, Petitioner argues that appellate counsel was ineffective because he failed to raise the claims raised in his motion for relief from judgment on direct appeal. As discussed, none of the claims Petitioner argues his appellate attorney should have raised on appeal has been shown to have merit. Therefore, counsel was not ineffective in failing to raise them.

18

## IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted).

The Court concludes that reasonable jurists would not debate the Court's disposition of the claims raised in this petition. Thus, the Court denies a COA.

## V. Conclusion

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus and a certificate of appealability are **DENIED**.

It is further **ORDERED** that Petitioner is granted leave to proceed *in forma pauperis* on appeal because an appeal could be taken in good faith. See Fed. R. App. P. 24(a).

Dated: February 9, 2023

s/ Nancy G. Edmunds  
NANCY G. EDMUNDS  
UNITED STATES DISTRICT JUDGE

19